UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BLACK AGENTS & BROKERS AGENCY, INC.(BABA)Milton Ward, Melvin Ward and Roosevelt Haywood, Jr., In their capacity as shareholders and officers of BABA, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>NEAR NORTH INSURANCE BROKERAGE, INC., MAJESTIC STAR CASINO, LLC, TRUMP INDIANA, INC., and Buffington Harbor Casinos<br><br>Defendants. | **FILED**<br>NOV 0 5 2003<br>STEPHEN R. LUDWIG, Clerk<br>U.S. DISTRICT COURT<br>NORTHERN DISTRICT OF INDIANA<br><br>No. 2:01 CV 419 |

## BRIEF IN OPPOSITION TO DEFENDANT RIVERBOATS' MOTION TO STRIKE EXHIBITS

Comes now Plaintiffs and in Opposition to Riverboats' Motion to Strike Exhibits, Plaintiffs state as follows:

### I. Argument

### Exhibits satisfy requirement of Fed. R. Evid. 901

Defendants contend that the exhibits designated in their Motion to Strike, Exhibits 9 through 13, should be stricken because "[t]hey have never been properly authenticated and because they are not relevant." (Motion at 6 and 7; Brief at 2)

In granting a motion for summary judgment, a "court may consider any material that would be admissible or usable at trial,' including properly authenticated and admissible documents or exhibits." Woods v. City of Chicago, 234 F.3d 979, 988 (7th

Cir.2000) (quoting Aguilera v. Cook County Police & Corrs. Merit Bd., 760 F.2d 844, 849 (7th Cir.1985) and citing Martz v. Union Labor Life Ins. Co., 757 F.2d 135, 138 (7th Cir.1985) In determining authenticity we follow Fed. R. Evid. 901 (a), which requires "evidence sufficient to support a finding that the matter in question is what its proponents claims." Smith v. City of Chicago, et al., 242 F.3d 737 (7th Cir. 2001); United States v. Boyd, 208 F.3d 638 (7th Cir.2000)

When a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed. R. Civ. P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality—either admissible documents or attested testimony, such as that found in depositions or in affidavits—demonstrating the existence of a genuine issue of material fact. Lujan v. Defenders of Wildlife, 119 L.Ed. 2d 351, 112 S. Ct. 2130 (1992); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); 6 Moore's Federal Practice P 56.11 [1-8] 2d ed. 1983) (When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence)

Evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial. Celotex Corp. v. Catrett, 477 U.S. at 324. Occasional statements in cases that the party opposing summary judgment must present admissible evidence, e.g., Sokogon Chippewa Community v. Exxon Corp., 2 F.3d 219, 224-25 (7th Cir. 1993), should be understood in this light, as

referring to the content or substance, rather than the form, of the submission. Winskunas v. Birnbaum, et al., 23 F.3d 1264.

FRE Rule 901(a) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901 (b) (4), captioned "Distinctive characteristics and the like," cites as examples of authentication or identification conforming with the requirements of Rule 901, "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." The Advisory Committee Notes discussing 901 (b) (4) states that the "characteristics of the offered item itself, considered in the light of circumstances, afford authentication techniques in great variety."

In this case defendant has not alleged that genuine issues exist as to authenticity of any of the exhibits. It is essential to distinguish between excluding evidence for want of adequate authentication, and challenging its weight. United States of America v. Boyd, 208 F.3d 638 (7th Cir.2000) The defendant will have the opportunity to question the weight that the jury should give to the challenged exhibits, but questions of authentication are governed by Fed. R. Evid. 901 (a), which merely requires "evidence sufficient to support a finding that the matter in question is what its proponents claims.

## II. Argument

### Exhibits relevant under Fed. R. Evid. 402

Defendants assert generally that "none of the exhibits are relevant to this issue." (Defts. Brief in Support of Motion to Strike at 7) The issue is whether a genuine issue of

3

material fact exist as to whether an insurance brokerage agreement was formed between NNIB, BABA and the Riverboats.

To be relevant, evidence need not conclusively decide the ultimate issue in a case, as suggested by the Riverboats, nor make the proposition appear more probable, "but it must in some degree advance the inquiry." 1 J. Weinstein & M. Berger, Weinstein's Federal Evidence sec. 401.04[2][b]; see also Davis v. Lane, 814 F.2d 397, 399 (7th Cir.1987) As the Seventh Circuit has noted, this "is not a difficult standard to meet." United States v. Brisk, 171 F.3d 514, 525 (7th Cir.1999). For that reason, relevance under Rule 402 must be construed liberally, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 587 (1993), and the "[e]xclusion of relevant evidence should be used sparingly." Morgan v. United Air Lines, Inc., 750 F.Supp. 1046, 1055 (D.Colo.1990). In this case the question should not be whether a brokerage contract was formed between NNIB, BABA and the Riverboats, but rather whether the content of the challenged exhibits contain fact that is of consequence to the determination of the action. Similarly, evidence is often considered relevant background information when it permits a jury to better understand the context of an employer's actions. See Fed. R. Evid. 401 advisory committee's note; cf. Old Chief v. United States, 519 U.S. 172, 186 (1997).

In EEOC v. Indiana Bell Telephone Company, 256 F.3d 516 (7th Cir.2001) the court stated that "our definition of what constitutes relevant evidence has been expanded even further beyond the lax standard articulated in the Federal Rules. For example, even when a piece of evidence did not technically make a fact of consequence more or less probable, we have, allowed the entry of that evidence when it fills the gap that its exclusion might create. "Evidence is relevant if its exclusion would leave a

chronological and conceptual void in the story." Wilson v. Groaning, 25 F.3d 581, 584 (7th Cir.1994) ("Leaving out this evidence would have left the jury with an unduly sanitized and incomplete version of the facts.")

As stated above "to be relevant, evidence need not conclusively decide the ultimate issue in a case, nor make the proposition appear more probable, "but it must in some degree advance the inquiry." 1 J. Weinstein & M. Berger, Weinstein's Federal Evidence sec. 401.04[2][b]; see also Davis v. Lane, 814 F.2d 397, 399 (7th Cir.1987)

The Riverboats conclude its individual arguments regarding each challenged exhibit with the following words:

| Exhibit | Conclusion |
| --- | --- |
| 9 | "Such evidence certainty (sic) does not constitute that an enforceable contract existed between BABA and the Riverboats." |
| 10 | "Such evidence certainty (sic) does not constitute that an enforceable contract existed between BABA and the Riverboats." |
| 10-11 | "which in no way evidences any type of enforceable contract between BABA and the Riverboats" |
| 11 | "[a]dditionally, the documents of BABA's expense account do not establish the existence of an enforceable contract between BABA and the Riverboats." |
| 12 | "This letter certainly does not establish that an enforceable contract existed between BABA and the Riverboats." |
| | "which in no way evidences any type of enforceable contract between BABA and the Riverboats." |
| | "This proposal certainly does not establish the existence of an enforceable contract between BABA and Trump." |

5

13        "These documents do not establish the existence of any type of enforceable contract between BABA and the Riverboats."

BABA contends that the exhibits are relevant because they advance the inquiry of whether a genuine issue of material fact exists as to the formation of an agreement whereby NNIB <u>and</u> BABA provided insurance brokerage services to the Riverboats.

Exhibit 9:   The content of this exhibit is relevant as to when the relationship between BABA and NNIB commenced; the nature of the proposed relationship, a joint venture to provide insurance to the gaming boats in Gary.

Exhibit 10:   The content of these exhibits is relevant to the state of mind of BABA pertaining to the concept of a joint venture between NNIB and BABA to provide insurance to the Buffington Harbor Riverboats, LLC; infers the commencement of commission splitting on Riverboat projects by NNIB and BABA; 10-3 pertains to meetings planned with the Barden people (Majestic Star) and Trump; 10-4 infers BABA's state of mind as to the existence of a joint venture between NNIB and BABA to provide insurance services to the Riverboats; 10-5 infers the intent of NNIB and BABA to jointly provide insurance brokerage services to the Riverboats; 10-6 indication of the state of mind of BABA as to the establishment of a joint venture between NNIB and BABA to provide insurance services to the Riverboats and discusses the commission splitting arrangement for providing services to the Riverboats and requesting that BABA be included in the next service call with the Riverboat representatives; 10-7 proposed joint venture agreement between BABA and NNIB to provide insurance services to the Riverboats;10-8- discloses that NNIB seeks a consultation agreement between it and BABA whereby BABA would support the relationship between NNIB and the

Riverboats; nothing in the NNIB proposal addresses the payment of insurance premiums to BABA by the Riverboats; 10-10- culmination of agreement between NNIB and BABA; 10-11- payment under the agreement between NNIB and BABA; 10-12- letter that discusses NNIB and BABA making renewal insurance presentation and proposal on the Trump Indiana, Inc. and Buffington Harbor Riverboats, LLC and demonstrates that NNIB and BABA are providing insurance brokerage services to the Riverboats; 10-13, 10-14, 10-15, 12-16 infers that NNIB and BABA were providing insurance brokerage services to Majestic Star, Buffington Harbor Riverboats and Trump; 11-infers that BABA and NNIB were joint venturers in the provision of insurance brokerage services to the Riverboats; 11-1, 11-2- infers that the Riverboats in consideration of the insurance brokerage services provided by NNIB and BABA paid fees for said services, part of which went to NNIB and part to BABA; infers that brokerage agreement existed between NNIB and BABA as co-insurance brokers who provided insurance to the Riverboats; 11-3 and 13 raises inference that insurance brokerage agreement existed between the Riverboats and BABA and that the Riverboats paid their insurance premiums to BABA for the periods 1998-1999, 1999-2000 and 2000-2001; 12-infers that BABA assisted in development of renewal proposals for Trump and Buffington and that BABA would get its share of the commission once payment was obtained from the Riverboats.

    If the exhibits which the Riverboats seek to strike were excluded from the record a chronological and conceptual gap in the story would be created in that it would be difficult to ferret out the formation of a broker agreement between the Riverboats and co-brokers NNIB and BABA. The formation of the co-broker agreement with the Riverboats is supported by other evidence in the record as well.

The Riverboats reliance upon Scott v. Edinburg (Brief at 6) is misplaced. Scott is distinguishable from the current case in that in Scott the report of an expert was introduced into the record without any supporting affidavit verifying its authenticity and was therefore inadmissible and could not be considered for purposes of summary judgment.

Defendants also raise an objection that the exhibits should be stricken because they contain inadmissible hearsay. These exhibits are not excluded by the hearsay rule and are admissible under Fed. R. Evid. 803 (6). These exhibits are records kept in the course of a regularly conducted business activity which can be shown by the testimony of the custodian or other qualified witness. Haywood v. Lucent Techs., Inc., 323 F.3d 524, 533 (7th Cir.2003) (stating that evidence relied upon to defeat a motion for summary judgment must be evidence of a type admissible at trial); Fed. R. Civ. P. 56(e); Fed. R. Evid. 901(a)

## CONCLUSION

The Riverboats' Motion for Summary Judgment, Motion to Strike portions of Milton Ward's Affidavit, Motion to Strike Exhibits and its Reply to BABA's Opposition to the Motion for Summary Judgment, establishes that there is a genuine issue of material fact as to whether a brokerage agreement was formed between the Riverboats and co-brokers NNIB/BABA. For the foregoing reasons, law and argument, the Riverboats' Motion to Strike designated paragraph's of Milton Ward's affidavit and Motion to Strike Exhibits, and Motion for Summary Judgment should be denied.

Respectfully submitted,

Douglas M. Grimes, P.C.

_____
Douglas M. Grimes, Atty. #7304-45
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing documents have been served upon counsel of record, by First Class, U.S. Mail, postage prepaid, this 4th day of November, 2003

_____
Douglas M. Grimes

**DOUGLAS M. GRIMES, P.C.**
**6941 IRONWOOD AVENUE**
**GARY, INDIANA 46403**
**219-939-9511**